**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| ONGELIQUE EVERSON, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 12-07288 (FLW) |
| | : | |
| v. | : | |
| | : | **OPINION** |
| | : | |
| JPMORGAN CHASE BANK, | : | |
| | : | |
| Defendant. | : | |

**WOLFSON, United States District Judge:**

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant, JPMorgan Chase Bank ("Defendant" or "Chase"), has moved to dismiss three of the four causes of action asserted in Plaintiff's, Ongelique Everson ("Plaintiff" or "Everson") Complaint, on the ground, *inter alia*, that Everson's common law claims for breach of contract, negligent infliction of emotional distress, and intentional infliction of emotional distress ("IIED") are preempted by New Jersey's Law Against Discrimination ("LAD"). N.J.S.A. § 10:5-1, *et seq*. For the reasons set forth in this Opinion, the Court finds that the LAD preempts Everson's common law claims, and grants Defendant's Motion to Dismiss counts II, III, and IV.

**BACKGROUND**[1]

---

[1] Since this is a Motion to Dismiss, all factual allegations are taken from Plaintiff's complaint. Although Plaintiff submitted a declaration in conjunction with her Opposition to this motion, that declaration will not be relied upon. In evaluating a motion to dismiss, a court may only consider the complaint, exhibits attached to the complaint, matters of public record, and

1

Plaintiff became employed by Chase in its Bedminster, New Jersey branch beginning on May 4, 2009 and in mid-2010, she was transferred to Chase's Hackettstown branch. (Compl. ¶¶ 1, 4). In March 2011, Plaintiff notified her branch manager that she was pregnant with her first child. (*Id.* at ¶ 9). Subsequently, in April 2011, Plaintiff received six tardies, and on May 26, 2011, she was terminated. (*Id.* at ¶¶ 10, 16) Plaintiff contends that she had never been tardy during April, and that any tardiness documented on her time sheets must have been changed or falsified after her time sheets were submitted and approved. (*Id.* at ¶¶ 10, 13-14). Plaintiff also contends that Chase violated the progressive discipline system provided for by the Chase Handbook, which provides for coaching, counseling, and written warnings in the event corrective action is needed. (*Id.* at ¶¶ 12, 15, 17, 29).

Plaintiff filed her Complaint on October 11, 2012, in the Superior Court of New Jersey, Law Division, Warren County. In her Complaint, Plaintiff asserts four causes of action: 1) gender/pregnancy discrimination in violation of the New Jersey LAD statute (Count I), 2) contractual breach of an employment handbook (Count II), 3) IIED (Count III), and 4) negligent infliction of emotional distress (Count IV). (*See* Compl.). On November 26, 2012, Defendant removed the case to this Court on diversity jurisdiction grounds. It then filed the instant Motion to Dismiss, in part, Plaintiff's Complaint. Specifically, Defendant moves to dismiss counts II, III, and IV because such claims are preempted by the New Jersey LAD statute.[2] While Plaintiff opposed Defendant's Motion, she wholly failed to address Defendant's preemption arguments,

---

undisputedly authentic documents if the complainant's claims are based upon these documents. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

[2] Defendant also discusses alternative grounds for the dismissal of these claims. However, since the Court finds that Plaintiff's claims are preempted by the LAD, it does not need to reach these alternative grounds.

2

and also did not address or oppose in any manner the motion to dismiss count IV, the negligent infliction of emotional distress claim.[3]

## DISCUSSION

### I.     Standard of Review

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court clarified the 12(b)(6) standard. The factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 1965. As the Third Circuit has stated, "[t]he Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: 'stating ... [a] claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 127 U.S. at 1965); see also *Covington v. International Ass'n of Approved Basketball Officials*, ––F.3d ––, ––––, 2013 WL 979067, at *2 (3d Cir. 2013) ("[A] claimant does not have to 'set out in detail the facts upon which he bases his claim.' ... The pleading standard 'is not akin to a 'probability requirement,'' ... to survive a motion to dismiss, a complaint merely has to state a 'plausible claim for relief.'" (Citations omitted.)).

---

[3] Having failed to address the negligent infliction of emotional distress claim, the Court deems this claim abandoned by Plaintiff. In any event, this claim would also be preempted by LAD for the same reasons set forth in section III(B) of this Opinion dealing with IIED.

In affirming that *Twombly*'s standards apply to all motions to dismiss, the Supreme Court explained several principles. First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1949. Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. U PMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). However, "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings ... [although a] limited exception exists for documents that are integral to or explicitly relied upon in the complaint." *W. Penn Allegheny Health Sys., Inc. v. U PMC*, 627 F.3d 85, 97 n.6 (3d Cir. 2010) *cert. denied*, 132 S. Ct. 98 (2011) (citation and internal quotation marks omitted).

## II. LAD Preemption

The New Jersey LAD statute was first enacted in 1945 in an effort to "eradicat[e] '… the cancer of discrimination.'" *Lehmann v. Toys 'R' Us, Inc.*, 132 N.J. 587, 600 (1993) (quoting *Fuchilla v. Layman*, 109 N.J. 319, 334 (1988)); *see also Shaner v. Horizon Bancorp.*, 116 N.J. 433, 436 (1989) (LAD was enacted to reflect "the clear public policy of this State … to abolish discrimination in the work place."); N.J.S.A. § 10:5-1, *et seq.*. It formally recognized and declared the "opportunity to obtain employment" to be "a civil right," *Lehmann*, 132 N.J. at 600 (quoting N.J.S.A. § 10:5-4); the statute is meant to "protect the public's strong interest in a discrimination-free workplace." *Lehmann*, 132 N.J. at 600. Furthermore, the LAD makes

4

"damages … available to all persons protected by this act" and is to be liberally construed. N.J.S.A. § 10:5-3.

Because of the broad availability of remedies under the LAD, both state and federal courts in New Jersey have frequently held that the LAD bars common law claims based on the same operative facts as underlie the LAD claim. *Catalane v. Gilian Instrument Corp.*, 271 N.J. Super. 476, 492 (App. Div. 1994) (holding that supplementary common law causes of action may not go to the jury when a statutory remedy under the LAD exists); *DeCapua v. Bell Atlantic-New Jersey, Inc.*, 313 N.J. Super. 110, 128 (Law Div. 1998) ("Because plaintiff's common-law breach of contract claim duplicates his statutory claim under New Jersey's LAD, it is barred."); *Mardini v. Viking Freight, Inc.*, 92 F. Supp. 2d 378, 382-85 (D.N.J. 1999) (dismissing a wrongful termination claim which involved the same elements of discrimination as the LAD claim); *DeJoy v. Comcast Commc'ns, Inc.*, 941 F. Supp. 468, 476 (D.N.J. 1996) (finding plaintiff's common law claim preempted by the LAD where plaintiff provided no information showing his common law claim was 'different or broader' than his LAD claim)). Thus, if Everson's common-law claims are duplicative of her claim made under the LAD, those claims are barred and must be dismissed.

### III.     Plaintiff's Claims

At issue on this motion are Plaintiff's claims for breach of contract and IIED. While Plaintiff has also pled violations of the LAD and negligent infliction of emotional distress, Defendant does not, at this time, seek to dismiss Plaintiff's LAD claim, and Plaintiff has abandoned her negligent infliction of emotional distress claim by failing to oppose its dismissal. Because Defendant contends that Plaintiff's breach of contract claim and IIED claim duplicate her LAD claim, a discussion of the facts underlying Plaintiff's LAD claim is necessary here.

In support of her LAD claim, Plaintiff relies upon the facts set forth *supra*, but also makes several specific allegations with regard to Defendant's alleged gender/pregnancy discrimination. Plaintiff notes that she is female and was eight months pregnant at the time of her termination, and that it was not until she informed her manager of her pregnancy that she was terminated and ultimately replaced by a "non-pregnant, male employee." (Compl. ¶¶ 17, 24-26). Plaintiff claims that her only instances of documented tardiness occurred after she announced her pregnancy, (Compl. ¶ 11), and that she was given no warnings before being terminated, in violation of Defendant's handbook policies. (Compl. ¶ 12). In sum, Plaintiff's LAD claim boils down to her belief that she was terminated due to her pregnancy, and that her time sheets were altered after she announced her pregnancy in order to give her termination a façade of legitimacy. It is to these core facts which Plaintiff's breach of contract claim and IIED claim must be compared.

### A. Breach of Contract

Plaintiff alleges that Defendant breached a contract with Plaintiff by manipulating her timesheets and failing to provide Plaintiff with any of the employee handbook's steps for corrective action. However, in so making her claim, Plaintiff relies upon the same basic allegations of discrimination on which she relies for her LAD claim. (Compl. ¶ 23). According to Plaintiff, Defendant did not simply manipulate Plaintiff's timesheets and fail to follow the handbook, it failed to do so *because* Plaintiff is a female and was pregnant. Plaintiff incorporates numerous facts into her breach of contract claim that make it clear that her breach of contract claim sounds in discrimination. Plaintiff alleges that the "illusory tardies" appeared on her record "after announcing her pregnancy to Chase." (Compl. ¶ 11). She specifies that her replacement was a "male employee." (Compl. ¶ 15). She contends that, had company policies been followed,

she would have received her maternity leave. (Compl. ¶ 18). Plaintiff also claims that because of the way in which she was treated, other employees have "deliberately avoided informing the branch that they are pregnant" for fear of receiving similar "discriminatory treatment." (Compl. ¶ 19). Beyond the incorporated facts, Plaintiff's first allegation specific to her breach of contract claim repeats that the "illusory tardies" were received only "*after announcing her pregnancy*." (Compl. ¶ 28) (emphasis added). At bottom, Plaintiff's contention is that Chase's alleged manipulation of her time sheets and its failure to follow the employee handbook's corrective action policy following her "illusory tardies" occurred because of Plaintiff's pregnancy – a discrimination claim. Thus, Plaintiff's breach of contract claim is preempted by her LAD claim.

The majority of other courts in this jurisdiction have reached the same conclusion in similar circumstances. In *DeCapua*, the Plaintiff alleged, in addition to his LAD claim, breach of contract for breach of a document entitled "Equal Employment Opportunity & Affirmative action" that stated that supervisors must ensure that all subordinates are free from harassment. *Id.* The court wrote that "[b]ecause plaintiff's common-law breach of contract claim duplicates his statutory claim under New Jersey's Law Against Discrimination, it is barred." *Id.* In *Santiago v. City of Vineland*, the court found that Plaintiff's common law breach of contract claim, which was "based upon an alleged official nondiscrimination policy of the City of Vineland," was "duplicative of the cause of action under the NJLAD and therefore … preempted by the statute." 107 F. Supp. 2d 512, 566, 568 (D.N.J. 2000). Similarly instructive is *DiMare v. Metlife Ins. Co.*, which found a "breach of contract claim that seeks damages for discriminatory acts on the basis of a statement in a policy manual" to be preempted by the LAD. No. 07-4268, 2008 WL 2276007, at *3 (D.N.J. June 2, 2008). Such holdings are consistent with the principle that

"supplementary causes of action may not go to the jury when a statutory remedy under the LAD exists." *Catalane*, 271 N.J. Super. at 492 (App. Div. 1994).

### B. IIED

Plaintiff also alleges that Defendant's failure to follow the handbook procedures prior to terminating her employment, while following the procedures with regard to male and non-pregnant female employees, constituted outrageous conduct, and was intended to cause, and did cause, severe emotional distress. Compl. ¶¶ 34-36. However, for the same reasons that Plaintiff's breach of contract claim is preempted, Plaintiff's IIED claim, which is duplicative of her LAD claim, is also preempted. Plaintiff's IIED claim is based on the same operative facts as underlie her LAD claim. In addition to the facts discussed in the previous section, which are incorporated into Plaintiff's IIED claim, Compl. ¶ 32, the paragraphs specific to the IIED claim reinforce that the crux of the claim is the same alleged discrimination being used to support Plaintiff's LAD claim. In these paragraphs, Plaintiff claims that she was "wrongfully terminated … *while 8 months pregnant*[,]" and that "Chase followed the handbook for *male and non-pregnant female employees*, but chose to disregard such policies when it came to Plaintiff." (Compl. ¶¶ 33-34) (emphases added). It is not the alleged failure to follow the handbook or the alleged wrongful termination by themselves which Plaintiff claims to be outrageous – it is that the Defendant committed these alleged wrongs for discriminatory reasons. Plaintiff's IIED claim is thus merely a restatement of her LAD claim, and is therefore preempted.

Other courts have found similarly. In *Quarles v. Lowe's Home Centers, Inc.*, the court held that an IIED claim based on the same allegations supporting Plaintiff's LAD claim was barred by the LAD. No. 04-5746, 2006 WL 1098050 (D.N.J. Mar. 31, 2006). The court in *Valentine v. Bank of America*, found, in denying a motion for leave to amend, that "[w]hen a

8

common law claim of intentional emotional distress is based on the same allegations supporting Plaintiff's LAD claim, Plaintiff is not entitled to relief …" because "[Plaintiff's] LAD claims preempt her common law claim[.]" No. 09-262, 2010 WL 421087, at *6 (D.N.J. Feb. 1, 2010); *see also Metzler v. American Transp. Group, LLC*, No. 07-2066, 2008 WL 413311, at *4 (D.N.J. Feb. 13, 2008) (holding that because Plaintiff's claims of emotional distress were based on the same operative facts as her claims under the LAD, her claims were preempted by the LAD). This Court finds that the circumstances here warrant the same conclusion.

## CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff's breach of contract and IIED claims are preempted by her LAD claim, and that Plaintiff's NIED claim has been abandoned, or alternatively, would be barred for the same reasons. The Court therefore grants Defendant's Motion to Dismiss counts II, III, and IV of the Complaint.


       /s/ Freda L. Wolfson
The Honorable Freda L. Wolfson
United States District Judge